# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CYNTHIA REYNOLDS,

              Plaintiff,

    v.                               **Case No. 23-CV-738**

MJC AMERICA, LTD., et al.,

              Defendants.

# DECISION AND ORDER

## 1. Background

Cynthia Reynolds suffered a fire in her Oshkosh, Wisconsin, home on December 4, 2020. (ECF No. 58, ¶ 12.) Reynolds alleges that the fire was caused by a dehumidifier manufactured and sold by the defendants, MJC America, Ltd, Gree USA, Inc., Hong Kong Gree Electric Appliance Sales, LTD, and Gree Electric Appliances Inc of Zhuhai (referred to here collectively as Gree). (ECF No. 54, ¶¶ 4, 21.) Reynolds's insurer, American Family Insurance, paid her $146,015.40 for expenses related to the fire. (ECF No. 58, ¶ 12.) American Family assigned to Reynolds any subrogation claim it may have, in exchange for a lien in the amount it paid. Reynolds then brought this action against Gree. The court has subject matter jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

Pending before the court are various motions. Reynolds seeks summary judgment that Gree is liable under Wisconsin's strict product liability statute, Wis. Stat. § 895.047, and that "she is entitled to claim punitive damages." (ECF No. 28.)

Gree filed its own motion for summary judgment (ECF No. 35.) It asks the court to find that American Family is the real party in interest as to the amount it paid Reynolds and that Reynolds's potential punitive damages must be related to only her expenses beyond those compensated by American Family. (ECF No. 37 at 3.)

Gree (technically only Gree USA, Inc. and MJC America, Ltd) also filed a motion to compel asking, in material part, the court to find that the plaintiff has waived her objections to Gree's requests for production and interrogatories, and compelling the plaintiff to provide complete, objection free, responses, and extending the deadline for discovery. (ECF No. 46.)

## 2. Motions for Summary Judgment

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund.*, 778 F.3d 593, 601 (7th Cir. 2015). The court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The court will "read the facts and draw all reasonable inferences in the light most favorable to

the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id*. If the movant sustains its burden and shows both that there are disputed material facts and that it is entitled to judgment as a matter of law "[t]he court shall grant summary judgment …." Fed. R. Civ. P. 56(a).

### 2.1. Real Party in Interest / Subrogation

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "The 'real party in interest' is the person who possesses the right or interest to be enforced through litigation, and the purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually entitled to recover." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010) (citing Fed. R. Civ. P. 17(a) advisory comm.'s note (2009); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008); 4 Moore's Federal Practice § 17.10 (3d. 2009)).

The general rule is that if an insurer has paid all of the insured's claim, then the insurer, not the insured, is the real party in interest under Federal Rule of Civil Procedure 17(a). *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993). Accordingly, Gree argues that American Family is the real party in interest and only it can prosecute this action.

Reynolds argues that American Family never had a right to subrogation because under the policy language, subrogation is discretionary and American Family never exercised that right. (ECF No. 31 at 11-12.)

But whether American Family had a right to subrogation, contractual or otherwise, is inconsequential because American Family assigned to Reynolds any subrogation claim it had, subject to a lien for the $146,015.40 it paid. (ECF No. 58, ¶ 12.)

Gree argues that this assignment and lien procedure was an improper scheme to increase American Family's recovery by opening the door to punitive damages. Gree notes that American Family retained Attorney Ronald W. Harmeyer to pursue its claim against Gree. Harmeyer then facilitated the assignment and lien agreement between American Family and Reynolds. A condition of that agreement was that Reynolds retain Harmeyer to prosecute a claim against Gree. Reynolds's deposition testimony revealed that she has been only nominally involved in the action. She expressed no understanding of the assignment and lien agreement, did not review her own discovery responses, and did not appear to understand the nature and extent of her claims. From Gree's perspective, although prosecuted in Reynolds's name, this is an action prosecuted for American Family's benefit by American Family's attorney.

Gree acknowledges that Reynolds would be a real party in interest for any additional damages she sustained that were not compensated by American Family. *See Krueger*, 996 F.2d at 932 (stating that if an insurer pays only part of an insured's loss, the insurer and insured "should appear in the litigation in their own names")

4

(quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 381 (1949)). Reynolds may be able to obtain punitive damages, but only in relation to her additional damages. But Gree argues that Reynolds has not presented evidence of any such additional damages and therefore, not only is Reynolds unable to seek punitive damages, she is also not even a real party in interest.

An insurer may waive or assign its right to subrogation, *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 598, 511 N.W.2d 855, 860 (1994) (quoting *Leonard v. Bottomley*, 210 Wis. 411, 417, 245 N.W. 849, 851 (1933)), subject to the caveat that assignments contrary to public policy are void, *Am. Ins. Co. v. Milwaukee*, 51 Wis. 2d 346, 354, 187 N.W.2d 142, 146 (1971). And just as an assignor ceases to be a real party in interest if it assigns its total interest, an assignee becomes a real party in interest through assignment *Etransmedia Tech., Inc. v. Allscripts Healthcare, LLC*, 448 F. Supp. 3d 910, 914 (N.D. Ill. 2019) (citing *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 505 n.17 (7th Cir. 1982); *Rawoof*, 521 F.3d at 763); *see also Liner v. Mittelstadt*, 257 Wis. 70, 80, 42 N.W.2d 504, 509-10 (1950) ("an absolute assignment of the rights which the insurer had acquired by subrogation constitutes the assignee the real party in interest notwithstanding a collateral agreement by which the assignee contracts to pay to the assignor part of the amounts ultimately collected").

Having assigned any right to subrogation it may have had, American Family is not a real party in interest. As assignee, Reynolds is the real party in interest as to both any subrogation claim American Family had and any additional claim she may

have for damages not compensated by American Family. Gree has failed to show that American Family's lien renders it a real party in interest. There is nothing to suggest that the lien, standing alone, afforded American Family any authority to assert a claim against Gree. "The real party in interest is the one who 'by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.'" *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1343 (7th Cir. 1988) (quoting *Illinois v. Life of Mid-America Insurance Co.*, 805 F.2d 763, 764 (7th Cir. 1986)).

As to Gree's effort to impose subrogation, it "has the burden of showing both (a) that there would be some basis for asserting subrogation … and, (b) that subrogation must be applied in equity in those circumstances." *Jindra*, 181 Wis. 2d at 599.

Gree argues that if, as Reynolds argues, American Family never had a right to subrogation because it did not exercise its contractual right, then the assignment / lien agreement fails for want of consideration. Absent a valid lien, Reynolds might not reimburse American Family, leaving American Family to pursue a claim in subrogation against Gree, thereby forcing Gree to pay twice. To avoid this inequitable outcome, Gree argues that subrogation must be imposed.

Gree's argument rests on American Family simultaneously having and not having a subrogation claim. If American Family had a subrogation claim, the assignment and lien agreement was based on sufficient consideration. If American Family lacks a subrogation claim, then there is no basis for American Family ever

pursuing a claim against Gree. Should Reynolds try to evade American Family's lien, that is a matter between Reynolds and American Family; there is no plausible way Gree would be left holding the bag or be answerable to American Family. *See Hopp v. MJC Am., Ltd.*, No. 23-cv-325-jdp, 2025 U.S. Dist. LEXIS 15033, at *11-12 (W.D. Wis. Jan. 27, 2025).

In sum, American Family, having assigned any right of subrogation it may have had, is not a real party in interest. Reynolds is a real party in interest both as the assignee of any subrogated claim American family may have had and as to any claim she has for damages in excess of those paid by American Family. Gree has failed to sustain its burden to impose subrogation because it has not shown that there is any risk of it being forced to pay twice for damages or that the equities otherwise favor imposing subrogation.

## 2.2. Punitive Damages

If the end game for American Family is merely for it to get reimbursed for what it paid on Reynolds's claim, why wouldn't American Family skip the assignment and lien rigamarole and simply pursue a subrogated claim against Gree?

As alluded to above, it seems clear that the assignment and lien scheme arose to expand the scope of Reynolds's remedies to include punitive damages. While punitive damages are available in product liability cases if the defendant's conduct was "outrageous," *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 271, 294 N.W.2d 437, 444 (1980), punitive damages are a remedy available only for claims prosecuted by the injured party. A subrogee cannot recover more than the amount it paid. *Beacon*

*Bowl v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 773, 501 N.W.2d 788, 801 (1993) (quoting *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 402, 120 N.W.2d 70 (1963)).

Gree argues that the assignment and lien agreement created a backdoor by which American Family stands to impermissibly collect punitive damages. It notes that Reynolds's expert calculated her damages as $132,239.12. (ECF No. 37 at 2.) If that sum were the maximum Reynolds could obtain from a jury, then the only way she could ever satisfy American Family's $146,015.40 lien would be if the jury awarded her punitive damages and she paid American Family $13,776.28 of those punitive damages.

As a preliminary matter, Gree correctly notes (ECF No. 37 at 12) that under Wisconsin law punitive damages are remedy, not a cause of action. *Tikalsky v. Friedman*, 2019 WI 56, ¶55, 386 Wis. 2d 757, 928 N.W.2d 502; *Estate of Wobschall v. Ross*, 488 F. Supp. 3d 737, 755 (E.D. Wis. 2020). A plaintiff seeking punitive damages should state so in her complaint's request for relief under Fed. R. Civ. P. 8(a)(3), but a prayer for relief is distinct from a claim. *See Cent. Brown Cty. Water Auth. v. Consoer Townsend*, No. 09-C-131, 2011 U.S. Dist. LEXIS 122574, at *18 (E.D. Wis. Oct. 21, 2011). Accordingly, Reynolds's third cause of action, which she titled "Claim for Punitive Damages Against the Gree Companies" (ECF No. 1 at 26) will be dismissed.

As to the question of whether punitive damages are a remedy available to Reynolds, her damages are not capped at $132,239.12. Reynolds's retained an expert

8

to rebut the opinion of Gree's expert that her damages were less than $100,000. It was only in rebuttal that this expert provided the $132,239.12. The jury is not bound to accept that figure as the extent of Reynolds's damages. The jury may reasonably award Reynolds damages in the amount of the $146,015.40 American Family actually paid to Reynolds.

But even if the jury were to award Reynolds compensatory damages of less than American Family's lien, the result would not be an improper award of punitive damages to an insurer. American Family's lien allows it to merely be made whole for what it paid on the claim. That a jury may designate a portion of its award as punitive damages does not alter the scope of American Family's loss. It would be a different matter if the lien had been for more than what it paid Reynolds; that may suggest the sort of end run around the prohibition against subrogees obtaining punitive damages that Gree argues this practice would permit. Assignment under those circumstances may be void as against public policy. *See Am. Ins. Co.*, 51 Wis. 2d at 354, 187 N.W.2d at 146. But that is not what happened here, and Gree's suggestion that condoning the present conduct would lead to insurance companies clogging courts with unnecessary litigation (ECF No. 37 at 22) is unpersuasive.

American Family may also stand to effectively receive punitive damages under its lien if the jury finds Reynolds contributorily negligent. Again, if Reynolds were found contributorily negligent, it likely would only be by Reynolds paying to American Family a portion of the judgment that the jury designated as punitive damages that Reynolds would be able to satisfy American Family's lien. An insured's comparative

negligence is a risk properly borne by the insurer. But insofar as this may result in Reynolds effectively compensating American Family for a risk that she insured against, presumably this was bargained for in the assignment and lien agreement.[1]

What is dispositive as it relates to punitive damages is that the lien stands to compensate American Family merely for what it paid rather than improperly enriching it with an award of punitive damages. Rather than opening the door to *insurers* obtaining punitive damages to which they are *not* entitled, this practice merely opens the door to *insureds* obtaining the punitive damages to which they *are* entitled. While punitive damages serve the public interest in deterring wrongdoing, they belong to the plaintiff in part as an incentive for them (and their attorneys) to prosecute outrageous malfeasance on the public's behalf. *See Kink v. Combs*, 28 Wis. 2d 65, 80, 135 N.W.2d 789, 798 (1965). That public policy is served by the assignment and lien agreement.

---

[1] Of course, Attorney Harmeyer represented both American Family and Reynolds with respect to the assignment and lien agreement. This is ethically perilous given that, as this example highlights, the two clients' interests may not always align. *See* Wis. SCR 20:1.7. The fact that Harmeyer continues to simultaneously represent American Family and Reynolds poses additional ethical perils. (*See* ECF No. 31-1 at 4-9) (transcript of motion hearing in *Chinouth v. MJC America*, 24cv50323 (N.D. Ill.), wherein the court expressed concern over Harmeyer simultaneously representing the insurer and insureds under similar circumstances)). The circumstances may also result in an attorney's personal interests being adverse to a client. For example, an award of punitive damages would benefit an attorney compensated on a contingent fee basis and his insured client, whereas his insurer client may prefer a quick resolution for the amount of the claim rather than a protracted fight over punitive damages it cannot receive. Certain potential conflicts could be mitigated if the insurer's lien were limited to the compensatory damages the insured may obtain up to the amount the insurer actually paid. But the court finds it unnecessary to address the matter further. Such dual representation is not inherently impermissible, and the court has no evidence of any specific impropriety here. American Family is a sophisticated litigant, and it does not appear that Reynolds stands to plausibly obtain less under the assignment and lien agreement than she would without it.

Gree continues and argues that Reynolds is permitted to pursue punitive damages only if she suffered damages beyond those reimbursed by American Family. Such compensatory damages are required before the jury may consider punitive damages, and any punitive damages must be related to only the damages that Reynolds personally sustained. Therefore, if Reynolds only uncompensated damage was her $1,000 deductible, then punitive damages likely could be no more than $9,000. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Our jurisprudence and the principles it has now established demonstrate … that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); *see also* Wis. Stat. § 895.043(6) (limiting punitive damages to "twice the amount of any compensatory damages recovered by the plaintiff or $200,000, whichever is greater").

This line of argument amounts to a contention that tortfeasors are largely, if not totally, exempt from punitive damages when a victim was compensated by her insurer. That, of course, would be radically inconsistent with the public policy underlying punitive damages. *Cf. Bmw of N. Am. v. Gore*, 517 U.S. 559, 568 (1996) ("Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition."); *Hopp v. MJC Am., Ltd.*, No. 23-cv-325-jdp, 2025 U.S. Dist. LEXIS 15033, at *13 (W.D. Wis. Jan. 27, 2025). Manufacturers of home products like Gree might not be sufficiently deterred by the threat of punitive damages because near universal homeowner insurance would limit such damages.

Gree has not pointed to any case where a court held that any sum paid by insurance must be excluded from the assessment of the appropriate amount of punitive damages. Such a holding would seem to be contrary to public policy for many reasons including the broad policy underlying the collateral source rule that "a plaintiff's recovery cannot be reduced by payments or benefits from other sources," *see Orlowski v. State Farm Mut. Auto. Ins. Co.*, 2012 WI 21, ¶18, 339 Wis. 2d 1, 810 N.W.2d 775 (quoting *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 47, 630 N.W.2d 201, 209). The fact of insurance should not limit a tortfeasor's obligations. *Cf. Orlowski*, 2012 WI 21, ¶18 (quoting *Fischer v. Steffen*, 2011 WI 34, ¶30, 333 Wis. 2d 503, 797 N.W.2d 501) (noting that a purpose of the collateral source rule "is to deter a tortfeasor's negligent conduct 'by placing the full cost of the wrongful conduct on the tortfeasor'").

Finally, Gree argues that punitive damages should be excluded because they are unnecessary to serve the public interest in light of Gree having already been criminally convicted for the conduct that Reynolds argues merits punitive damages.

Punitive damages are often thought of as an adjunct of the criminal law in that both serve the same social purposes. In fact, punitive damages can fill gaps left in the criminal justice system by providing an incentive for the private prosecution of wrongs that the criminal justice system, for one reason or another, might not prosecute. *See Kink*, 28 Wis. 2d at 80, 135 N.W.2d at 798. That shared purpose does not render the systems binary. In other words, the fact that a defendant was criminally convicted does not preclude the plaintiff from seeking and obtaining

punitive damages for the same conduct. *See Mayer v. Bowe*, 2011 WI App 121, ¶¶ 11-13; 337 Wis. 2d 89, 803 N.W.2d 867 (affirming jury's award of punitive damages when defendant had been criminally convicted for the same underlying conduct); *Henrikson v. Strapon*, 2008 WI App 145, ¶¶27-35, 314 Wis. 2d 225, 758 N.W.2d 205 (noting that drunk driving, reckless driving, and hit-and-run convictions may, but do not necessarily, merit punitive damages); *see also Sloniker v. Harris*, 127 Wis. 2d 559, 378 N.W.2d 295 (Ct. App. 1985) (rejecting argument that a trial on punitive damages following a criminal conviction would result in double jeopardy).

Therefore, Gree's motion to exclude punitive damages will be denied. Likewise, Gree's motion to limit the consideration of punitive damages to those damages that Reynolds sustained that were not covered by insurance will be denied. However, the court will also deny Reynolds motion with respect to punitive damages. The court cannot hold now that it will be appropriate to present the question of punitive damages to the jury. Whether it is appropriate for the court to submit the question of punitive damages to the jury will depend on the evidence adduced at trial. *Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 225, 358 N.W.2d 816, 819 (Ct. App. 1984). At this stage, all the court can determine is that Gree has not shown that punitive damages must be excluded. *Cf. Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) (noting that because a movant did not meet its burden at summary judgment does not mean that the cross-movant met its burden).

### 2.3. Defendants' Liability

Reynolds retained two experts on the question of liability. Don VanOss concluded that the fire started in the Gree dehumidifier. (ECF No. 31 at 4.) Derek Starr concluded that the dehumidifier caught fire because of an unsafe design. (ECF No. 31 at 4-5.) Gree did not offer any contrary expert opinion. Reynolds argues that she is entitled to summary judgment on the question of Gree's liability because without an expert from Gree, the evidence is undisputed that the fire started in the dehumidifier and was caused by an unsafe design.

Reynolds's argument ignores two pillars of our system of justice; the role of the jury and of cross-examination. Indeed, the jury, is not required to accept the conclusions of Reynolds's experts. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony.") To that end, Gree may rely solely on cross-examination to attempt to discredit the conclusions of Reynolds's experts. For example, Gree points to evidence that Reynolds did not perform any maintenance on the humidifier (ECF No. 64, ¶ 8) and powered it with an extension cord (ECF No. 64, ¶ 12). If Gree succeeds in eliciting evidence of these factors, or others that Reynolds's experts did not consider, the jury may find that Reynolds failed to sustain her burden of proof. Or perhaps the jury may find that Reynolds's actions, such as failing to clean the dehumidifier filter, caused or contributed to the fire. These considerations rest properly in the province of the jury. Therefore, the court will deny this aspect of Reynolds's motion for summary judgment.

### 3. Gree's Motion to Compel

MJC America, Ltd. and Gree USA, Inc. (which again will be referred to collectively as Gree) contend that Reynolds failed to comply with her discovery obligations.

On October 10, 2023, Gree served Reynolds with interrogatories, requests for admission, and requests for production. (ECF No. 49-1.) Reynolds responded to Gree's requests for admission initially on November 8, 2023, and she amended her responses on November 22, 2023 (ECF No. 49, ¶ 3[2] (citing ECF No. 49-2.).) Reynolds did not respond to the interrogatories and requests for production until November 30, 2023. (ECF Nos. 49, ¶¶ 6-7; 49-6.)

Gree served additional interrogatories and requests for production on April 16, 2024. (ECF No. 49, ¶ 13.) Reynolds responded on May 2 and 16, 2024. (ECF No. 49, ¶ 3.) Despite numerous attempts to resolve the remaining disputes (ECF No. 49, ¶¶ 15-21) Gree has not received all discovery it has demanded.

Gree's asserts that Reynolds "[p]rovided nonresponsive/evasive answers, replete with impermissible objections, to no less than 10 of Defendant's demands," "[s]tonewalls discovery by lodging nonsensical objection to multiple demands, including based on the Collateral Source Rule," and failed to provide her retainer agreement with her attorney and the contact information for the friends she stayed with while he home was being repaired. (ECF No. 48 at 5-6.)

---

[2] Although the amended response states that Attorney Harmeyer signed it on November 22, 2023, it states that Reynolds did not sign it until November 30, 2023. (ECF No. 49-2 at 17.)

Gree asks the court to find that, aside from claims of privilege, all of Reynolds's objections to Gree's interrogatories and requests for production have been waived. (ECF Nos. 48 at 8; 61 at 2.) It further asks the court to order Reynolds to provide full and complete answers to the interrogatories and to produce (1) documents related to her communications with American Family (ECF No. 48 at 5[3]); (2) her retainer agreement with Attorney Harmeyer; and (3) the identity and contact information for the friend with whom she lived while her home was being repaired.[4]

As to Gree's request that the court order Reynolds "to provide full and complete, objection-free discovery responses within 5 days of said Order" (ECF Nos. 48 at 1, 13; 61 at 2), the nature and extent of this request is unclear. Not every answer is obviously incomplete; nor is every objection obviously meritless. It is not the court's role to speculate as to the nature of a movant's argument or to make a party's argument for it. *See Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019). Accordingly, the court considers only the specific discovery demands for which

---

[3] Gree supports its request for communications between Reynolds and American Family with a footnote stating "Ex. F (ROG 10); (ROG 11); (RFP 10); et al." (ECF No. 5, fn. 1.) Insofar as the "et al." suggests that Gree seeks to compel more than responses to Interrogatory Nos. 10 and 11 and Request No. 10, the motion is denied. It is the movants burden to develop its arguments and claim for relief. An ambiguous "et al." is insufficient to present a request for relief before the court. Substantively, the dispute appears to be limited to the fee and retainer agreement in that the documents would appear to provide the information sought in the interrogatories.

[4] The parties purport to incorporate by reference various documents into their briefs. (ECF Nos. 48 at 2, 4, 5; 51 at 11.) Incorporation by reference to other documents is not an appropriate means for presenting or developing claims or arguments for many reasons. *See Williams-Lindsey v. Nat'l Car Rental Sys., Inc.*, 143 F. App'x 712, 712-13 (7th Cir. 2005). Incorporation by reference stands to thwart rules regarding page limits, *see* Civ. L.R. 7(7)(f), and it often forces the court to wade through matters unrelated to the present dispute. Accordingly, insofar as either side has attempted to advance or preserve an argument by purporting to incorporate any document by reference, the argument is disregarded. The court considers only arguments developed in the parties' briefs.

Gree has developed an argument for relief. Insofar as Gree seeks relief beyond the specific matters addressed below, the motion is denied.

### 3.1. Reynolds's Waiver of Objections

"The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

Reynolds does not respond to Gree's argument that her responses to Gree's first set of interrogatories and requests for production were untimely. Having failed to demonstrate that good cause excuses her failure to timely respond, as to Gree's first set of interrogatories dated October 10, 2023 (ECF No. 49-1 at 2-9; *see also* ECF No. 49-6 at 2-8), she forfeited all objections other than privilege.

There is no similar Rule regarding requests for production whereby an untimely response results in the waiver of objections. *See* Fed. R. Civ. P. 34(b)(2). Gree has failed to demonstrate that it is entitled to any relief merely because Reynolds failed to timely respond to Gree's request for production. Therefore, Gree's request that the court finds that Reynolds forfeited all objections to its requests for production will be denied.

### 3.2. Discovery Related to American Family

The following interrogatories and answers relate to Reynolds's communications with American Family:

INTERROGATORY NO. 10: Describe in detail and with particularity any statements you made after the incident in question that concerned the incident in question to any and all persons, including the field/insurance adjuster, any other representatives from American

Family, the local fire department, the local police department, and any expert retained by you or American Family.

ANSWER TO INTERROGATORY NO. 10: Please see the NFIRS report prepared by the Oshkosh Fire Department, which was previously produced as Exhibit 1 to Plaintiff's Rule 26(a) (1) Disclosures.

INTERROGATORY NO. 11: List or provide a complete statement of loss for the dwelling and contents with a full breakdown of the individual item alleged damaged and the cost to either repair or replace. For each item and/or repair listed, identify (1) whether you have received any payment for each damaged item, (2) the person, individual, agency, or institution making the payment, and (3) the amount paid.

ANSWER TO INTERROGATORY NO. 11: Plaintiff objects to this request. As the Wisconsin Supreme Court held in *Leitinger v. DBart Inc.*, evidence of collateral sources is generally inadmissible; "the collateral source rule generally precludes introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor." *Leitinger v. DBart Inc.*, 302 Wis.2d 110, 126 (2019). The *Leitinger* court further held that actual amounts paid by insurance companies is irrelevant under the collateral source rule. *Id*. at 150. The question of whether a third party ever paid for any damages is therefore irrelevant, and is not discoverable. Subject to, and without waiving this objection, an itemization of plaintiff's damages was previously produced as Exhibit 3 to plaintiff's Rule 26(a)(1) disclosures.

(ECF No. 49-6 at 5-6.)

Notwithstanding her prefatory objections, there is nothing about Reynolds's answer to Interrogatory No. 11 that suggests it is incomplete. Gree has failed to develop an argument, much less prove, that it is entitled to anything further.

However, Reynolds's answer to Interrogatory No. 10 is obviously incomplete in that the interrogatory sought detail of all statements "to any and all persons, including the field/insurance adjuster, any other representatives from American Family, the local fire department, the local police department, and any expert

retained by you or American Family" but her answer addressed only a statement to the fire department.

Reynolds having waived any objection, *see* Fed. R. Civ. P. 33(b)(4), she shall provide a full and complete answer to Interrogatory No. 11 within 14 days of the date of this order.

Gree further requested in Request No. 10: "All receipts, invoices, etc. for any payments made by American Family that are in your possession that you allege are due to the incident in question, including payments related to property damage or additional living expenses." (ECF No. 49-6 at 11.)

Reynolds responded:

> Plaintiff objects to this request, as it seeks materials which are irrelevant and unlikely to lead to the discovery of admissible evidence. As the Wisconsin Supreme Court held in *Leitinger v. DBart Inc.*, evidence of collateral sources is generally inadmissible; "the collateral source rule generally precludes introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor." *Leitinger v. DBart Inc.*, 302 Wis.2d 110, 126 (2019). American Family is not a party to this lawsuit, and it has assigned its subrogation claim to the plaintiff. See Exhibit 1. Any documentation concerning plaintiff's insurance claim is therefore not discoverable. Subject to, and without waiving this objection, see the itemization of damages previously produced as Exhibit 1 to plaintiff's Rule 26(a)(1) disclosures.

(ECF No. 49-6 at 11.)

Information need not be admissible for it to be discoverable. Fed. R. Civ. P. 26(b)(1). Thus, the collateral source rule—which, in part, bars the admission at trial evidence that the plaintiff's losses were compensated by another source, *see Leitinger v. DBart, Inc.*, 2007 WI 84, ¶¶84-86, 302 Wis. 2d 110, 736 N.W.2d 1, does not bar discovery into compensation from other sources.

Gree states that during the meet-and-confer process Reynolds agreed to provide communications with American Family as well as the policy and instructions given by American Family to the restoration company. (ECF No. 48 at 3.) Nonetheless, she has failed to provide the documents.

Just as Reynolds failed to respond Gree's argument that her responses to Gree's first set of interrogatories and requests for production were untimely, Reynolds similarly does not address Gree's description of the meet and confer processin her response to Gree's motion to compel. Evidence of what American Family paid on the claim is relevant to Reynolds's damages claim. Gree's motion to compel Reynolds to fully comply with Request No. 10 will be granted. Within 14 days of this order Reynolds shall fully comply with the request.

### 3.3. Retainer Agreement

In Request No. 11 of Gree's second requests for production, it sought Reynolds's "retainer and fee agreement with Ron Harmeyer and Ron Harmeyer Law Office, LLC for this litigation." (ECF No. 50-4 at 7, ¶ 11.) Reynolds responded:

> Objection: while information regarding a client's fees may not be protected by the attorney-client privilege, this request seeks materials which are not relevant, and which are not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff's retainer and fee agreement with her counsel has no bearing on the contested issues before the Court, which are the defendant's liability and the damages that the plaintiff sustained as a result of the fire which is the subject of this lawsuit. The retainer and fee agreement is therefore not discoverable under Rule 26(b)(1).

(ECF No. 50-4 at 7-8.)

Retainer and fee agreements generally are not privileged. *See In re Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990); *Kratzer v. Scott Hotel Grp.*, No. 4:17-cv-00212-TWP-DML, 2019 U.S. Dist. LEXIS 230063, at *15 (S.D. Ind. Apr. 23, 2019); *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 532 (N.D. Ill. 2011). Nonetheless, fee agreements usually are not discoverable because it is uncommon that a fee agreement is relevant to an issue in the case.

Reynolds asserts that she "has made straight forward product liability and negligence claims" and therefore the retainer agreement is not relevant to any issue in the case. (ECF No. 51 at 6.)

While the claims may be straightforward, the circumstances that led to Reynolds personally bringing those claims are anything but. As discussed above, the assignment and lien agreement raise questions of whether Reynolds is the real party in interest and whether her attorney has a conflict of interest. The retainer and fee agreement that Reynolds entered into with Attorney Harmeyer is relevant (if not central) to both questions. Gree has offered more than mere speculation of a conflict between plaintiff and her counsel. *Cf. City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 U.S. Dist. LEXIS 259041, at *6 (N.D. Ill. Feb. 26, 2020). The irregularities associated with Attorney Harmeyer simultaneously representing both Reynolds and American Family in the assignment and lien agreement makes this the exceptional case where plaintiff's retainer and fee agreement with counsel is properly discoverable.

Consequently, the fee and retainer agreement is discoverable, and Gree's motion to compel will be granted with respect to Request No. 11 of Gree's second requests for production.

### 3.4. Identity of Reynolds's Friend

In Interrogatory No. 2 of Gree's second set of interrogatories, Gree asked Reynolds to "[i]dentify and provide contact information for the friend that you stayed with following the fire." (ECF No. 50-4 at 2.) Reynolds responded:

> The plaintiff objects to this request as unlikely to lead to the discovery of admissible evidence. As plaintiff's itemization of damages shows, the plaintiff is not claiming the payments that she made to her friend as damages in this lawsuit. Rather, the plaintiff is claiming loss of use of her property during the period in which it was uninhabitable as a result of the fire. Consequently, the identity of the friend that the plaintiff stayed with while she was displaced from her home is irrelevant, and undiscoverable. This discovery is cumulative, and this topic was discussed at length during plaintiff's deposition. See Reynolds 144:7-145:3.

(ECF No. 50-4 at 2-3.) Gree states that Reynolds eventually agreed to disclose the identity of her friend (ECF No. 48 at 4) but has since reneged and refused to do so.

In response to Gree's present motion Reynolds argues that the identity of her friend is not relevant because she already provided all information that her friend may be able to offer. (ECF No. 51 at 8.) She also argues that disclosure of her friend's identity would be disproportionate to the needs of the case because it "would put personal strain on Ms. Reynolds' relationship with her friend who has no interest in being subpoenaed and being forced to testify." (ECF No. 51 at 9 (quoting ECF No. 50-7 at 4 (plaintiff's counsel's letter to defense counsel)).)

In asserting that her friend's information would be duplicative of evidence she already provided, Reynolds's effectively concedes that her friend possesses relevant information. That information purports to be duplicative does not render it irrelevant and it is not a determination for Reynolds to make. To the contrary, questioning witnesses who are expected to provide duplicative information allows parties to corroborate or impeach witnesses. Of course, there are limits; a party may not retread the same ground over and over. But the limit is one of reasonableness, *see* Fed. R. Civ. P. 26(b)(2)(C)(i), and Reynolds has failed to show that the request for her friend's identity is unreasonable.

The identity of Reynolds's friend is particularly relevant because Reynolds's claim includes a fence installed at the friend's home to accommodate Reynolds's dog. (ECF No. 51 at 7.) Reynolds's friend's identity is discoverable to permit Gree to assess, for example, whether this claimed expense was attributable to the fire at Reynolds's home as opposed to an improvement that primarily benefitted Reynolds's friend. Therefore, Gree's motion to compel Reynolds to answer Interrogatory No. 2 of Gree's second set of interrogatories will be granted. Reynolds shall provide a full and complete answer to Interrogatory No. 2 within 14 days of the date of this order.

## 4. Conclusion

By virtue of American Family's assignment of any subrogation claim to Reynolds, Reynolds is the real party in interest under Fed. R. Civ. P 17(a)(1). American Family does not stand to improperly recover punitive damages as a result of its lien for the amount it paid to Reynolds. And in light of the public policy

underlying punitive damages, Reynolds's claim for punitive damages is not necessarily limited to damages she sustained beyond those compensated by American Family. Gree's criminal conviction for similar conduct does not make punitive damages inappropriate. Punitive damages, however, is a remedy and not a cause of action. Therefore, the court will dismiss Reynolds's claim for punitive damages.

Reynolds has failed to show that she is entitled to summary judgment as a matter of law as to Gree's liability. Nor has she demonstrated that she is necessarily entitled to have the question of punitive damages presented to the jury.

As to Gree's motion to compel, by failing to timely respond, Reynolds waived all objections (other than privilege) to Gree's first set of interrogatories. The motion is granted as to Gree's Interrogatory No. 10 regarding Reynolds's communications with others, Request No. 10 regarding Reynold's communications with American Family, Request No. 11 regarding Reynolds's fee and retainer agreement with Attorney Harmeyer, and Interrogatory No. 2 regarding the identity of the friend with whom Reynolds stayed while her house was being repaired. Reynolds shall provide complete responses within 14 days of this order. The motion to compel is denied in all other respects.

**IT IS THEREFORE ORDERED** that the motion for partial summary judgment filed by Cynthia Reynolds (ECF No. 28) is **denied**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Gree Electric Appliances, Inc. of Zhuhai, Gree USA Inc, Hong Kong Gree Electric Appliance Sales LTD, and MJC America, Ltd (ECF No. 35) is **granted** with respect

to Cynthia Reynolds's "Third Cause of Action" "Claim for Punitive Damages Against the Gree Companies"; punitive damages is a request for relief rather than a claim. The motion is **denied** in all other respects.

**IT IS FURTHER ORDERED** that the motion to compel filed by Gree USA, Inc. and MJC America, Ltd (ECF No. 46) is **granted in part and denied in part**. It is granted as to Gree's Interrogatory No. 10 regarding Reynolds's communications with others; Request No. 10 regarding Reynold's communications with American Family; Request No. 11 regarding Reynolds's fee and retainer agreement with Attorney Harmeyer; and Interrogatory No. 2 regarding the identity of the friend with whom Reynolds stayed while her house was being repaired. Reynolds shall provide complete responses within **14 days** of this order. The motion to compel is denied in all other respects.

**IT IS FURTHER ORDERED** that, the court having granted in part Gree's motion to compel, any request for expenses shall be filed within **14 days** of the date of this order. *See* Fed. R. Civ. P. 37(a)(5)(C). Briefing on any request shall proceed under Civil Local Rule 7(b) and (c).

Dated at Green Bay, Wisconsin this 28th day of February, 2025.

/s/ Byron B. Conway
BYRON B. CONWAY
United States District Judge